**In re Emanuel Z. KOPSTEIN, Debtor.**

**Bankruptcy No. 92–11234.**

United States Bankruptcy Court, N.D. California.

Feb. 8, 1994.

David Chandler, Santa Rosa, CA, for debtor.

Mark Frisbie, Walnut Creek, CA, for creditor Monty Ellison.

Scott A. Wyman, Los Angeles, CA, for creditors Jeff Wilk and the Vail West Co.

MEMORANDUM OF DECISION

ALAN JAROSLOVSKY, Bankruptcy Judge.

In a prior decision in this case, the court denied the debtor's motion to avoid four judgment liens encumbering his residence pursuant to section 522(f)(1) of the Bankruptcy Code on the ground that there was no

equity in the residence. However, the debtor has subsequently convinced the court that there is a small equity, perhaps $30,000.00 or so, in the residence over and above the consensual liens. The court has reconsidered its order as to two of the judgment liens and entered an order conditionally avoiding them.

▪ Now before the court are the liens of the other two creditors, Monty Ellison and Jeff Wilk. The Ellsion lien, for $219,000.00, attached first and therefore had a value, as of the date of bankruptcy, of about $30,000.00. The Wilk lien, for over $400,000.00, was recorded last and had no value at all on the date of filing.

The creditors rely on *In re Chabot,* 992 F.2d 891, 895 (9th Cir.1993), and its statement that a debtor is not entitled to avoid a lien as it may attach to postpetition equity. However, *Chabot* is clearly distinguishable and the court doubts that the Court of Appeals would extend the effect of that decision beyond its facts.

In *Chabot,* the property was worth $400,-000.00 and was encumbered by first and second deeds of trust totalling $125,000.00; next in priority was the judgment lien, as a third deed of trust had been subordinated (992 F.2d at 893, 894). Thus, there was far more equity in the residence than the $45,000.00 homestead amount. There was enough equity, in fact, to cover almost all of the $240,-000.00 judgment lien. The court justly held that under those circumstances the judgment lien was not avoidable.

In this case, there is no equity at all over and above the consensual liens and the homestead exemption. If the court denies the debtor's motion, it means that at some future date the creditors will receive payment even though their liens are presently worthless. This situation was not addressed in *Chabot,* and the court in that case did not need to address section 522(c) of the Code, which requires a different result where there is no value in the property over and above the homestead amount.

Section 522(c) prohibits exempt property from being liable for any prepetition debts other than taxes and support payments. It would make no sense for any post-bankruptcy increase in the value of a debtor's home to be protected from claims caused by the worst fraud or malicious conduct, yet stand as security for a totally innocent debt just because the creditor had recorded an abstract of judgment. It is clear that Congress intended the debtor to have very great protection as to property which passed exempt through bankruptcy.

▪ Section 522(c)(2) explicitly extends the protections of section 522(c) to property where the liens on it have been avoided under section 522(f). Any argument that judgment liens are not avoidable because there is no actual sale has been scotched by the recent actions of the California legislature amending Code of Civil Procedure section 703.140(a) to make it clear that homestead rights in bankruptcy are not dependent on an actual sale.

▪ Moreover, section 522(c)(2)(A)(ii) specifically provides that exempt property is protected from liens which are void under section 506(d). Section 506(d) voids a lien to the extent it exceeds the value of the collateral. Thus, section 522(c)(2)(A)(ii) limits a judicial lien on exempt property to its value on the date of bankruptcy, *even if it is not avoided.* This section alone makes the Wilk lien forever void and limits the Ellison lien to a maximum of $30,000.00.

In *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court declined to extend the debtor's rights to include the power to "strip down" a lien on a home. However, that case is easily distinguishable in that it dealt with *consensual* liens, not involuntary judgment liens; giving the debtor such a right would have been inconsistent with section 722, which limited the debtor's "strip down" rights to personal property. In this case, the relief sought by the debtor is entirely consistent with sections 522(c) and (f), and in no way inconsistent with section 722 or any other section of the Code.

▪ As a strong matter of policy, the position taken by Ellison and Wilk ought not to be adopted by the court. The bankruptcy laws are first and foremost intended to maintain a viable property-owning middle class, as

such citizens are the backbone of this society and the source of its stability. The clear intent of Congress in sections 522(c) and (f) is to permit home-owning debtors to rid their exempt homes of judgment liens. A debtor ought not to be forced to abandon his home in order to start over again, yet that is what Kopstein would be forced to do if the court accepted the creditors' arguments.

The court does not understand the sort of self-loathing which prompts counsel for Ellison to argue that the court's ruling should be different for Kopstein because Kopstein is a lawyer. The mere fact that Kopstein is a lawyer does not change his rights as a debtor. If he has committed any culpable conduct, the Code provides appropriate remedies. Those remedies may not be expanded, nor Kopstein's rights limited, because of his professional status.

For the foregoing reasons, the debtor's motion to avoid the judgment liens will be granted. Counsel for the debtor shall submit an appropriate form of order, which shall incorporate the protections set forth in the orders issued as to the other judgment liens.